# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

PAULA A. WILSON, §
§
　　　*Plaintiff*, §
§
*versus* § CIVIL ACTION NO. 7:13-295
§
CAROLYN W. COLVIN, §
Acting Commissioner of §
Social Security, §
§
　　　*Defendant*. §

## REPORT AND RECOMMENDATION

　　Paula A. Wilson ("Wilson") seeks review of an adverse decision on her applications for disability-based benefits under the Social Security Act.

## I.　Judicial Review

　　A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

## II.  Background

Wilson applied for disability insurance benefits and supplemental security income due to heart attack, heart stents, irregular heartbeat, cardiac rehabilitation, heart disease, depression, bipolar disorder, leg cramps, throat lumps, elevated thyroid, heart pain, chest pain, back pain, anxiety, and numbness in her arms, feet, ankles, and legs.  (T. 209, 261, 304, 535-36).[1] An evidentiary hearing was held before an administrative law judge, Bruce S. Fein ("ALJ Fein").  (T. 31, 53-114).  Wilson attended and testified.  (*Id.*).  ALJ Fein received into evidence (a) testimony from Wilson, (b) forensic reports from state agency consultants, and (c) Wilson's medical records.  (*Id.*).  At the request of Wilson's counsel, ALJ Fein held the record open and received, without objection, additional evidence, including an updated medication list and additional clinic records.[2] (T. 31, 202-03, 300-305, 1033-1111).

ALJ Fein denied Wilson's applications   (T. 31-45), and Wilson filed a request to review with the Appeals Council (T. 27).  She submitted several briefs noting her disagreement with ALJ Fein's decision (T. 13-27, 18-21, 22-26), and supplied additional medical evidence.  (T. 1112-1149).   The Appeals Council accepted and considered portions of that evidence, but declined to consider the remaining items because they pertained to a period after the date of ALJ Fein's

---

[1]     "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 11).

[2]     None of which are highlighted by Wilson as demonstrating error.

decision.[3]  The Appeals Council also denied Wilson's request for review.  (T. 1-7). Wilson then instituted this proceeding.

## III.   Commissioner's Decision[4]

ALJ Fein found that Wilson suffers from physical and mental impairments that are "severe" within the meaning of the governing regulation.[5]  (T. 34).  He found that Wilson's *physical* impairments reduce her work capacity such that she can now perform only a full range of work at the light exertional level, and her *mental* limitations further reduce that capacity such that she can perform only low stress work requiring only simple tasks and instructions. (T. 36. 37-38).

[3]    The Appeals Council reviewed records from Patricia Allott, N.P., dated May 10, 2011 through February 27, 2012.  The Appeals Council considered only the portion of nurse Allott's records dated prior to November 14, 2011, but declined to consider those dated after November 14, 2011,because they would be irrelevant to ALJ Fein's decision.  For the same reason, the Appeals Council looked at but declined to consider medical records from: Elizabeth M. Logalbo, M.D., dated November 21, 2011 through January 9, 2012; Mariam H. Asar, M.D., dated January 17, 2012, through March 8, 2012; Nita Grover, M.D., dated February 22, 2012, through March 7, 2012; Edward J. Mazder, M.D., dated December 6, 2011; and Luis I Canales, M.D., dated February 1, 2012, through August 22, 2012. (T. 2).

The Appeals Council advised Wilson that if she wanted it to consider whether she was disabled after November 14, 2011, she would need to apply again, and it returned the post-decision evidence to her for use in a new claim. (T. 2).

[4]    ALJ Fein utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[5]    ALJ Fein found the claimant has six impairments that are "severe" for purposes of the sequential analysis regulation: (1) coronary artery disease post-cardiac catheterization with stent; (2) depressive disorder NOS; (3) personality disorder NOS; (4) cervical spondylosis, (5) alcohol abuse; and (6) polysubstance abuse.  (T. 34).

In ALJ Fein's view, these limitations preclude Wilson from performing her past relevant work as a waitress, but do not preclude performance of alternative, available work. (T. 43). Thus, the application was denied since her impairments do not prevent her from engaging in substantial gainful employment. (T. 45).

## IV. Alleged Errors

Wilson's brief proffers the following rhetorical questions:

1. Is the Commissioner's failure to properly evaluate Plaintiff's subjective complaints and credibility erroneous as a matter of law?

2. Is the Commissioner's evaluation of opinion evidence erroneous as a matter of law?

3. Is the Commissioner's finding that Plaintiff's severe mental impairments do not significantly limit her ability to perform basic work activities erroneous as a matter of law?

(Dkt. No. 21, p. 1).

As argued, the first two points implicate ALJ Fein's core finding of "residual functional capacity."[6] Wilson contends that ALJ Fein did not apply correct principles of law when assessing credibility of her subjective testimony or when weighing medical source opinions regarding severity of her limitations and how they affect her ability to function. Wilson's inferences are that these errors rendered the residual functional capacity finding infirm.

---

[6] Before making findings at Steps 4 and 5 of the sequential evaluation procedure, administrative law judges make predicate determinations of "residual functional capacity." This term refers to what claimants can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The Commissioner provides guidance for making such determination by regulations (20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)) and by an internal policy ruling (SSR 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *1 (SSA July 2, 1996)).

Wilson's third point argues that ALJ Fein's Step 5 erosion-of-occupational-base finding is patently unreasonable under the evidence and even under ALJ Fein's earlier-step findings. Because ALJ Fein found at Step 2 of sequential analysis that Wilson's mental impairments significantly affect her ability to perform basic work activities, Wilson argues that ALJ Fein could not rationally find at Step 5 that those impairments do not compromise her ability to perform work and that her occupational base has not been eroded.

## V.  Adequacy of Record

Advanced within Wilson's points of error 1 and 2 (which both complain of how evidence was weighted) are ancillary arguments that ALJ Fein failed to develop an adequate evidentiary record. These arguments are analytically distinct from challenges to credibility determinations, and relate to a Due Process issue that must be addressed as a threshold matter. Consequently, they are addressed separately in this section.

As discussed in greater detail, *infra*, in Sections VI and VII, ALJ Fein found Wilson's subjective testimony regarding intensity, persistence, and limiting effects of her symptoms not fully credible. He also elected to give little weight to forensic opinions of Wilson's primary care physician, Elizabeth Logalbo, M.D., regarding functional limitations caused by Wilson's mental impairments.[7] Wilson argues that ALJ Fein acted contrary to law in rejecting her subjective testimony evidence without first obtaining clarification from

---

[7]     ALJ Fein elected, however, to give great weight to Dr. Logalbo's opinions regarding functional limitations resulting from Wilson's physical impairments.  (T. 41).

Wilson's "treating psychiatrist" concerning her symptoms and their effect on her functioning. Similarly, Wilson argues that opinions of primary care physician, Dr. Logalbo, should not have been rejected without recontacting Dr. Logalbo or other treating sources "for clarification or support of Dr. Logalbo's opinion as to the plaintiff's mental residual functional capacity."

*A.     Governing Legal Principles*

Disability claimants undoubtedly possess a right to administrative records adequately developed to the point that fair and informed decisions can be reached thereon.[8] Thus, administrative law judges must recontact treating physicians or other medical sources, and request additional information when evidence in hand is inadequate to determine whether claimants are disabled. 20 C.F.R. § 416.912(e); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (when there is an inadequate medical record, an administrative law judge must *sua sponte* seek additional information). And, when further information is necessary, administrative law judges must first recontact treating sources. *See* 20 C.F.R. § 416.912(e); *Devora v. Barnhart*, 205 F. Supp.2d 164, 174 (S.D.N.Y. 2002) (collecting cases).

An administrative law judge's failure to develop the record adequately is an independent ground for vacating the Commissioner's decision. *See Moran,*

---

[8]     In the Social Security context, the concept of an adequate record is *sui generis*. "Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (internal quotation marks omitted). "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* (internal quotation marks omitted); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."). This affirmative obligation to develop an administrative record does not extend to infinity, however, and is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Further development is unnecessary, and administrative law judges may make determinations based upon existing evidence when it is consistent and sufficient to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520b(a), 416.920b(a). Reviewing courts agree that administrative law judges are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also Hart v. Commissioner of Soc. Sec.*, No. 5:07–CV–1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

B.    *Application*

Wilson's arguments infer, perhaps unintentionally, that when subjective testimony or treating source opinions do not bear indicia of credibility *initially*, administrative law judges have a legal duty to seek clarification or support *subsequently* in an effort to determine if credibility can be rehabilitated through additional evidence. Wilson cites no authority supporting this sweeping proposition, and independent research fails to disclose such. Consequently, any argument to this effect is unpersuasive.

The proper standard, instead, is whether the record before ALJ Fein contained obvious evidentiary gaps that precluded an informed decision. Here, there were no gaps in the record to trigger a duty to recontact treating sources

or further develop the record *sua sponte* through other sources. The administrative record, which contains 1,149 pages, contained a complete medical history of Wilson up to the date of ALJ Fein's hearing, including hundreds of pages of treatment records and consultative reports. It was adequate to permit ALJ Fein to make a disability determination. Hence, Wilson's claim that ALJ Fein was obligated *sua sponte* to recontact Wilson's "treating psychiatrist" before rejecting either subjective or medical opinion evidence lacks merit.[9] *See Carvey v. Astrue*, 380 Fed. App'x 50, 52 (2d Cir. 2010) (summary order) (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)).

## VI. First Point: *Adequacy and Weighting of Subjective Testimony*

Wilson testified that if she were to pick one thing as her most disabling impairment, it would be her back and legs. (T. 74). Her pain in the *middle* of her back is sharp and feels "like somebody punched" her. (T. 82). Because of her *lower* back, it feels "like a knife being stabbed" in her. (*Id.*). With respect to her

---

[9] When advocating that there was a duty to contact Wilson's "treating psychiatrist" *sua sponte*, Wilson refers to Dr. Mariam H. Asar, M.D., a staff psychiatrist at Canton-Potsdam Hospital. It does not appear that ALJ Fein knew about Dr. Asar, as Wilson had not become Dr. Asar's patient until after the date of the evidentiary hearing, and none of the records submitted to ALJ Fein either before or after the hearing mention Dr. Asar. It is absurd, therefore, to argue that ALJ Fein erred by not contacting Dr. Asar for clarification.

Dr. Asar completed a Social Security "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form on January 17, 2012, more than two months after ALJ Feine's decision, but before the Appeals Council acted. The Appeals Council returned it to Wilson for reasons reported earlier (n. 2).

Wilson resubmitted Dr. Asar's medical source statement and treatment notes with her brief in this action. She represents that they are identical to what were submitted to (but rejected by) the Appeals Council. A review of thereof indicates that Dr. Asar first began treating Wilson on August 23, 2011. This was <u>after</u> the evidentiary hearing and <u>after</u> the record was closed, but <u>before</u> ALJ Fein issued his decision. Given this circumstance, plus the fact that Wilson has not attempted to demonstrate that this portion of Dr. Asar's treatment notes constitutes "new evidence" within the meaning of 42 U.S.C. § 405(g), there is no basis to conclude that ALJ Fein erred in failing to further develop the record by contacting Dr. Asar.

leg pain, Wilson claimed that it feels like "a burning sensation." (*Id*.). She stated she has "good and bad days" with her back and leg pain. (T. 84). She further stated to alleviate back pain, she lies down or takes a bath. (*Id*.). Wilson testified that she also suffers from chest pain about once a month. (T. 85-86).

As for effects, Wilson testified that how long she can sit varies every day. (T. 83). She claimed that she will sit for about an hour; however, if in a hard chair, only 10-15 minutes. (T. 83, 109). Wilson claimed that sometimes when she takes a bath, she has a hard time getting out without using the rail to pull herself up on. (T. 98-99). She testified that she can stand for about an hour if she alternates it with sitting. (T. 109-110). She further stated that she does not try to walk very often; she goes in to the grocery store or Price Chop or Walmart and gets her business done. (T. 110).

Regarding mental impairments, Wilson testified that after her heart attack, she became very anxious about everything. (T. 88). She claimed she has mood swings. (*Id*.). She testified that anti-depressants do not help. (T. 90). She drank alcohol to "wash away the depression." (T. 92). Wilson claimed weekly sessions with her therapist are beginning to make it "a lot easier." (*Id*.).

As for daily activities, she does "half loads" of laundry three days a week. (T. 99). She does not cook extravagant meals. (T. 99-100). On holidays, she cooks larger meals for 8-9 people, but alternates sitting and standing. (T. 110, 113). She cleans dishes. (T. 108). She makes the bed, shops by herself, and carries bags. (T. 100). She can carry one gallon of milk, but not two, at a time. (*Id*.). She can lift 8 to 10 pounds. (T. 109). She drove herself to a doctor's appointment in Saranac Lake, about 1.5 hours from her house, but upon arrival, her toes were numb and legs hurt. (T. 101). She testified that she was a passenger on

a 7-hour round trip to a doctor appointment, but was very uncomfortable. (T. 102). To help pass the day, she stays in contact "every half hour" with "200-and-some friends" she has on Face book on her cellular phone. (T. 103). She also reads, watches television, listens to the radio, assists her elementary-age son getting ready for school, and waters plants in her vegetable garden. (T. 103-04).

Wilson testified she takes several medications and that side effects, such as drowsiness, insomnia, and diarrhea, come and go. (T. 81-82).

Based on this testimony, as well as statements made in other written submissions, ALJ Fein made the following credibility assessment:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the symptoms alleged by the claimant. Nevertheless, the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully credible.
>
> The claimant's activities show that she has actually been doing more that what her allegations claim she is capable of performing. The claimant is clearly able to engage in a wide range of independent daily activities. She can attend to her own personal care, drive, cook, do housework, bathe, shower, dress herself, do laundry, make the beds, go shopping, tend to her garden, get her son ready for school, do the dishes, vacuum, go outside, travel independently, go to appointments, talk on the phone, use Face book where she has 200 friends, pay bills, count change, handle savings account, use a checkbook/money orders, follow spoken and written instructions, use a computer, crochet, read, watch television, listen to the radio, and watch movies.....
>
> Furthermore, there are only minimal positive diagnostic and clinical findings to corroborate the location, duration, frequency, and intensity of the claimant's pain and other symptoms as a result of her impairments. The record is replete with reports of emergency room and hospital visits by the claimant that either produced no objective findings, or were exacerbated by her ongoing drug and alcohol abuse.... The evidence of

record is simply insufficient to support the existence of a disabling impairment in the claimant.

(T. 40-41) (exhibit references omitted).

Wilson maintains that ALJ Fein failed to properly evaluate her subjective credibility. (Dkt. No. 21, p. 16-18). Specifically, Wilson argues that ALJ Fein's decision contains "absolutely no analysis of the intensity or persistence of the Plaintiff's psychiatric symptoms and only cursory analysis of the limiting effects of these symptoms." (*Id.*, p. 16). Wilson maintains that ALJ Fein failed to elicit any details from her regarding the intensity, duration, frequency, and limiting effects of her psychiatric symptoms. (*Id.*, p. 17). Wilson contends that, without this full analysis, it was error for ALJ Fein to discount her subjective complaints and find her less than fully credible. (*Id.*, p. 18).

A.    *Governing Legal Standards*

Subjective testimony regarding persistence, intensity and limiting effects of symptoms is not only relevant, but desirable. On the other hand, it is subjective and may be colored by interest in obtaining a favorable outcome. An administrative law judge must, therefore, engage in a difficult task of deciding how much weight to give subjective self-evaluations.

1.    Commissioner's Protocol

The Commissioner provides explicit guidance. First, a formally promulgated regulation requires consideration of seven objective factors that naturally support or impugn subjective testimony of disabling pain and other

symptoms.[10] Second, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96–7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (SSA July 2, 1996). The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

---

[10] An administrative law judge must evaluate a claimant's symptoms, including pain, based on medical and other evidence, including the following factors:

(i)   claimant's daily activities;
(ii)  location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv)  type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v)   treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi)  measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an administrative law judge rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). Otherwise, a reviewing court cannot subject a credibility determination to meaningful judicial review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184–85 (2d Cir. 2010) (summary order).

### 2. Judicial Review of Subjective Credibility Determinations

Absent flagrant disregard of governing law, nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness.").

### B. Application

ALJ Fein cited all regulations and rulings that govern consideration of subjective evidence, and he expressly referenced the two-step process for

considering subjective symptoms. (T. 38). Absent overwhelming evidence to the contrary, these acknowledgments, alone, probably are sufficient for a reviewing court to conclude, that ALJ Fein engaged in all prescribed steps for assessing subjective credibility. *See Britt v. Astrue*, 486 Fed. App'x 161, 164 (2d Cir. 2012) (summary order) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96–7p as evidence that the administrative law judge used proper legal standard in assessing the claimant's credibility).

ALJ Fein clearly considered the intensity-persistence-and-limiting- effects prong of SSR 96-7p because it was his reason for finding Wilson's subjective testimony not fully credible. While he did not provide a step-by-step exposition of his evaluation of intensity, persistence, and limiting effects of Wilson's mental symptoms to determine the extent to which they limit her ability to do basic work activities, SSR 96-7p does not dictate such an exposition. Rather, it only requires that such evaluation be "based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *2. This Ruling elaborates that the entire record includes medical signs, laboratory findings, a claimant's statements, statements provided by treating or examining medical sources and other sources, and other relevant record. *Id*. ALJ Fein's decision reflects specific consideration of all these factors, to the extent there was evidence thereof.

Finally, and in compliance with both SSR 96-7p and governing circuit law, ALJ Fein articulated numerous reasons, all supported by substantial evidence, for finding Wilson's subjective testimony not fully credible. These included minimal positive diagnostic and clinical finding to corroborate Wilson's alleged

pain and other symptoms,[11] a wide range of normal daily activities requiring more exertion than Wilson claims ability to do,[12] and inconsistent statements regarding her drug and alcohol abuse.[13]

ALJ Fein's subjective credibility choice was reached and explained sufficiently, and is not reversible for failure to apply correct principles of law or for lack of substantial evidence.

## VII. Second Point: *Weighting of Treating Source Opinion*

### A. *ALJ Fein's Weighting[14]*

With respect to Wilson's mental functioning, ALJ Fein afforded *significant* weight to a mental residual functional capacity assessment prepared by state-

---

[11] As noted by ALJ Fein, the record is replete with reports of emergency room and hospital visits by Wilson that either produced no objective findings, or were exacerbated by her ongoing drug and alcohol abuse. (T. 38-40).

[12] Hospital records reveal that she reported herself to be independent in her activities of daily living. (T. 544). Wilson also testified that she does laundry every three days, cooks meals, makes beds, shops by herself, carries shopping bags, drives, and recently drove 2.5 hours to Saranac Lake. She also had ridden in a car for a 7-hour round trip. (T. 98-103). She reads, keeps in touch with friends through Face book, watches movies and television, listens to the radio, prepares her son for school, and waters plants. (T. 103-04).

[13] Wilson testified at the June 28, 2011, administrative hearing that she last drank alcohol six weeks earlier, and before that, that she only drank on "a very rare occasion." (T. 91). She also testified that on June 28, 2011, that she smoked marijuana, used cocaine once that year, and also used drugs before 2011. (T. 93-95). Hospital and medical treatment records in 2010 and 2011, however, show continuous abuse of alcohol, marijuana, cocaine, and pills. (T. 544, 547, 553, 555, 932. 1012, 1053, 1056-58, 1082, 1084-85) and note inconsistent statements by Wilson. (T. 680, 690, 710-11, 713, 945, 1012, 1016).

[14] Wilson does not challenge the weighting ALJ Fein afforded medical opinions related to her *physical* residual functional capacity. Thus, review is limited to ALJ Fein's weighting related to her *mental* residual functional capacity.

agency psychologist, Dr. T. Bruni.[15] (T. 41). He gave *little* weight to a "Mental Health Report (Employment)" form completed by her therapist, MaryAnn E. VanBuskirk, LCSW-R.[16] (T. 1033-34). He also gave *little* weight to several medical opinions related to Wilson's mental functioning expressed by her primary care physician, Dr. Logalbo.[17]

ALJ Fein stated that he rejected Dr. Logalbo's psychiatric opinions because they were completely subjective and unsupported by treatment notes or reports, there was no evidence of record that Dr. Logalbo ever performed a mental status examination of the claimant, and the record contained no other clinical or diagnostic findings that would mirror that level of disability.

ALJ Fein rejected therapist VanBuskirk's opinions for similar reasons. Her report also was completely subjective, unsupported by any treatment notes

---

[15] On September 2, 2010, Dr. Bruni reviewed Wilson's disability file and evaluated her mental impairments under listings 12.04 (affective disorders), 12.08 (personality disorders), and 12.09 (substance abuse disorders). Dr. Bruni completed a Psychiatric Review Technique form finding Wilson had only mild to moderate psychiatric limitations. (T. 585). Dr. Bruni also completed a Mental Residual Functional Capacity Assessment, finding Wilson to have no more than moderate limitations. (T. 589-92). Dr. Bruni opined that Wilson "retains the capacity to understand and follow directions, sustain attention/concentration for simple tasks, respond and relate adequately to others and adapt to simple changes." (T. 591).

[16] On November 30, 2010, VanBuskirk stated that Wilson was not qualified to work for 1-3 months due to her medical condition. (T. 1033). She further indicated that Wilson was unable to participate in other activities, including vocational training, classroom training, and rehabilitations. (*Id.*).

[17] On October 19, 2010, Dr. Logalbo found no and moderate limitations in most functional areas, but found Wilson was very limited in maintaining attention/concentration and in her ability to function in a work setting at a consistent pace. (T. 1063). Dr. Logalbo opined that Wilson was not qualified to work for six months due to her medical condition. (T. 1063).

On June 21, 2011, Dr. Logalbo noted that Wilson had a "poor ability to meet standards," related to quality, production, and attendance. (T. 1061).

On June 27, 2011, Dr. Logalbo opined that Wilson was "disabled" due to depression and anxiety. (T. 1059).

or reports, and devoid of any clinical or diagnostic findings that would establish this level of severity. (T. 43). It was inconsistent with other evidence, as well as with Wilson's longitudinal record of medical care. (*Id.*). ALJ Fein observed further that opinions of social workers are not presumptively entitled to controlling weight. (T. 42).

ALJ Fein accepted psychologist Dr. Bruni's opinions regarding functional effects of Wilson's mental impairments because they were consistent with Wilson's longitudinal record of medical care and given by a State Agency review psychologist. (T. 42).

B.    *Wilson's Challenge*[18]

Wilson argues ALJ Fein erred in the above weighting of medical source evidence for several reasons. Wilson first proffers that ALJ Fein failed to evaluate medical opinion according to certain factors prescribed by a governing regulation. Next, she argues that under unique rules applicable in social security disability proceedings, opinions of non-examining sources (such as Dr. Bruni) are entitled to less weight than examining and treating sources. Third, she argues that ALJ Fein was simply in error when finding that Dr. Logalbo's and therapist VanBuskirk's opinions were not supported by clinical or diagnostic findings. Finally, Wilson argues that rejection of treating source opinions based on a patient's subjective complaints was error.

---

[18]    Although there are additional consultative and treating source opinions in evidence, Wilson does not take issue with the weighting of these opinions; hence, there is no need to examine these additional opinions.

*C.*     *Governing Legal Principles*

The Commissioner categorizes medical evidence by "sources" described as "treating," "acceptable" and "other."  Administrative law judges are required to give controlling weight to opinions of  treating sources[19] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[20]

"Acceptable" medical sources are licensed  physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists.[21]   An acceptable medical source opinion or diagnosis is necessary to establish existence of a medically determinable impairment.[22]

"Other" sources are ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists.[23] Evidence

---

[19]     *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

[20]     20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[21]     20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical source refers to one of the sources described in § 404.1513(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources."  20 C.F.R. §§ 404.1502, 416.902.

[22]     SSR 06–03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006).

[23]     20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06–03p, 2006 WL 2329939, at *2.

from these sources "is evaluated on key issues such as impairment severity and functional effects."[24]

Evidence from *all three sources* can be considered when determining *severity of impairments and how they affect individuals' ability to function.* And, in *each* instance (except when controlling weight is given to a treating source's opinion), the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[25]

## D.    Application

### 1.    Dr. Bruni

ALJ Fein did not err when electing to give significant weight to the opinions of nonexamining psychological consultant, Dr. T. Bruni. State agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act, and, as such, their opinions can be given

---

[24]    *Id.,* at *2-3.

[25]    *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(Aug. 24. 2012) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").

   *See also,* SSR 06-03p, 2006 WL 2329939, at *4 ("Although the factors in 20 C.F.R. 404.1527[c] and 416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'").

weight.[26] While both the Commissioner and reviewing courts acknowledge that treating source opinion presumptively is entitled to controlling weight, and examining sources ordinarily are granted greater weight than nonexamining sources, consultative and reviewing source opinions can be afforded greater weight than treating source physicians when there is good reason to reject treating source opinion and substantial evidence supports consultative and reviewing source opinions. *See, e.g., Netter v. Astrue*, 272 Fed. App'x 54, 55-56 (2d Cir. 2008) (summary order) (reports of consultative doctors and/or non-examining physicians may override opinions of treating physicians when supported by substantial evidence).

Here, the opinion of the state agency consultant, Dr. Bruni, came from a subject-matter specialist (psychology[27])(Factor 5); and his opinions were more consistent with Wilson's medical treatment record as a whole (Factor 4). (T. 41-42). Dr. Bruni's opinions were formed after reviewing Wilson's longitudinal medical history as it existed at the time [Factor 6]. Although ALJ Fein did not perform factor-by-factor analysis, his choice to give more weight to consultative opinion comports with the law and is supported by substantial evidence.

---

[26] *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

[27] Wilson maintains that Dr. Bruni's credentials are "unknown" and, therefore, he should not be assigned more weight because of degree of expertise. (Dkt. No. 21, p. 19). The record indicates his area of specialty as "Psychology." (T. 575). Moreover, under the Commissioner's regulations and practices, the Psychiatric Review Technique form completed by Dr. Bruni must be signed by either a psychologist or psychiatrist. *See* POMS DI 24505.025.F.4, Evaluation of Mental Impairments, *available at* http://policy.ssa.gov/poms.nsf/lnx/0424505025 (last visited June 24, 2014); *see also* 20 C.F.R. §§ 404.1520a(e)(1), 404.1615(c)(1) (disability determinations made by a medical or psychological consultant)

## 2.    Therapist VanBuskirk

ALJ Fein did not err in affording social worker VanBuskirk little weight. ALJ Fein considered VanBuskirk's opinions by virtue of her status as an "other source"(Factors 5, 6),[28] but ALJ Fein gave them little weight because they were unsupported by treatment notes, reports, or clinical and diagnostic findings that would establish the level of severity indicated (Factors 3, 6). (T. 42-43). He also found that her opinions were inconsistent with other medical evidence of record (Factor 4). (T. 43).[29] Finally, ALJ Fein correctly noted that VanBuskirk's statement that Wilson is "disabled" was not entitled to any weight because the issue of disability is reserved exclusively to the Commissioner to decide.[30]  (*Id.*).

ALJ Fein's analysis regarding Wilson's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence.

## 3.    Dr. Logalbo

ALJ Fein also did not err in opting to give little weight to Dr. Logalbo's psychiatric opinions dated October 19, 2010, June 21, 2011, and June 27, 2011. (T. 42). ALJ Fein noted that her relationship is a treating one, but in the context

---

[28]     *See* 404.1513(a) & (d), 416.913(a) & (d).

[29]     Wilson contends that ALJ Fein erred in giving little weight to the opinions of therapist Van Buskirk.  She claims that Van Buskirk's opinions were consistent with Van Buskirk's own treatment notes as well as the opinions of others, including nurse Kathy Green, N.P., and psychiatrist Dr. Asar. Contrary to her assertion, VanBuskirk's treatment notes did not contain findings reflective of total disability. (T. 1035, 1038, 1041-1044, and 1050). Moreover, VanBuskirk's fails to recognize that Dr. Asar saw Wilson well after her form was completed and, under the regulations, a treating source opinion is weighed according to medical findings the source presents, not the findings of others. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  Under these circumstances, ALJ Fein properly discounted VanBuskirk's opinions.

[30]     *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

of primary care. He observed that Dr. Logalbo's opinion (that Wilson is mentally incapable of performing basic mental demands of work) is "unsupported by her treatment notes or reports, and is completely subjective" (Factors 1, 2, 3, and 6).[31] ALJ Fein noted there were simply no other clinical or diagnostic findings of record that would establish disability in Wilson (Factors 3, 4). (*Id*.). Moreover, he observed there is no evidence of record that Dr. Logalbo ever performed a mental status examination of the claimant (Factors 3, 6). (*Id*.). Thus, ALJ Fein concluded that Dr. Logalbo's assessment of Wilson *mental* limitations was inconsistent with the objective medical and other evidence of record,[32] as well as with the longitudinal record of medical care for Wilson (Factors 3, 4, 5, and 6).[33] (*Id*.). Again, this constituted an adequate regulatory-factor analysis and was supported by substantial evidence.

In sum, ALJ Fein neither violated the governing regulation nor exceeded bounds of his wide discretion when deciding to give little weight to treating

---

[31]   Wilson claim that it is error to reject treating source opinions simply because they were based on a patient's subjective complaints. Courts are split on this issue; however, it is not necessary to resolve it here. Dr. Logalbo's opinion was subjective, *per se*, not based on medical evidence. *See Castaldo v. Astrue*, No. 11-cv-322S, 2012 WL 2847904, at *4 & n.8 (W.D.N.Y. July 11, 2012) (collecting cases reflecting divergent views as to whether a physician's opinion can be rejected when based entirely on patien's subjective complaints).

[32]   Wilson again argues that ALJ Fein erred in the weight he assigned Dr. Logalbo, claiming that her opinions were supported by treatment records from other sources, which Dr. Logalbo "presumably reviewed and was familiar with." Wilson's contention is based on nothing more than speculation. There is no evidence that she reviewed treating records of others before forming her opinions. Further, as previously noted, treating source opinion is weighed according to the medical findings that source presents, not the findings of others. Given these circumstances, ALJ Fein could discount Dr. Logalbo's opinions.

[33]   When, as here, treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight. *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643-44 (2d Cir. 2007) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

source opinion and greater weight to consultative opinion.  Accordingly, he did not err in weighting medical opinions, and Wilson's second point of error fails.

## VIII.  Third Point: *Ability to Perform Alternative Work*

ALJ Fein found (at Step 4 of sequential evaluation) that Wilson's impairments prevent her from now performing her past relevant work as a waitress.  (T. 43).  The legal effect of such finding was that Wilson proved a *prima facie* case of entitlement to disability benefits.[34]  Under the governing analytical rubric, the burden then shifted to the Commissioner (at Step 5) to either award benefits or show, after considering Wilson's age, education, work experience, and residual functional capacity, that jobs exist in significant numbers in the national economy that Wilson can perform.  *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *Berry*, 675 F.2d at 467; 20 C.F.R. §§ 404.1566, 416.966.[35]

ALJ Fein found that a person with Wilson's residual functional capacity and vocational factors can perform such other available jobs.  To support that

---

[34]     *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

[35]     Generally, the Commissioner elicits or consults two principal sources of extrinsic evidence.  First, witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also* SSR 00-4p, TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000).  Second, a United States Department of Labor publication titled Dictionary of Occupational Titles ("DOT") can assist in determining when a claimant's residual work skills can be used in other work and the specific occupations in which they can be used.  *See* 20 C.F.R. §§ 404. 1560(d)(1), 416.960(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

In limited circumstances, the Commissioner also may take administrative notice of disability vel non by applying findings published in "Medical-Vocational Guidelines," commonly called "the grids."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. (See n. 33).

finding, ALJ relied upon the Commissioner's Medical–Vocational Guidelines commonly referred to as "the grids."[36] (T. 43-45). He determined that an individual with Wilson's *exertional* limitations[37] is not considered disabled under section 202.20. Because Wilson also is hampered by *nonexertional* limitations,[38] ALJ Fein did not apply section 202.20 directly. Rather, he used section 202.20 as a "framework for decision making," and considered additionally "the extent to which the unskilled light work occupational base has been eroded by the claimant's nonexertional limitations . . .." (T.44).

ALJ Fein concluded that Wilson's nonexertional mental limitations "have little or no effect on the occupational base of unskilled work at the light level of exertion." (T. 44). He based that conclusion on regulations and an internal policy ruling that delineate basic mental requirements for performance of competitive and remunerative unskilled work,[39] and also on evidence from Dr.

---

[36]    The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. They "take into account a claimant's [residual functional capacity], as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they support a finding of ability to perform alternative, available work, and ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

[37]    An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling). *See* 20 C.F.R. §§ 404.1569a(b), 416.969a(b).

[38]    "Nonexertional" refers to any impairment-caused limitation of function which directly affects capability to perform work activities other than primary strength activities. It includes mental limitations. *See* 20 C.F.R. §§ 404.1569a(c)(1)(i)(vi), 416.969a(c)(1)(i)(vi).

[39]    *See* 20 C.F.R. 404.1521(b), 416.921(b); SSR 96-8p.

Bruni (whose opinions were afforded significant weight) that Wilson retains capacity for meeting those demands. (T. 41). ALJ Fein then stated:

> Thus, the ability of the claimant to perform the full range of work at the light level of exertion has not been compromised by her nonexertional limitations, and the claimant's occupational base at the light level of work has not been eroded.

(T. 44).

Having concluded that Wilson can still perform all or substantially all of the exertional demands of light, unskilled work (T. 44-45), and having further determined that Wilson's mental limitations have little or no erosive effect on that occupational base, ALJ Fein concluded, under the framework of Medical-Vocational Guidelines, section 202.20, that a finding of "not disabled" was appropriate. (T. 45). In that respect, ALJ Fein cited and relied on another internal ruling (SSR 83-14) which takes administrative notice that the conclusion directed b y the appropriate grid rule is not affected when nonexertional limitations clearly have very little effect on the sufficiency of the remaining exertional job base. *See* SSR 83-14, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK–THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING A COMBINATION OF EXERTIONAL AND NONEXERTIONAL IMPAIRMENT, 1983 WL 31254, at *3 (SSA 1983).

A.    *Wilson's Challenge*

Wilson perceives ALJ Fein's Step 5 findings (and ultimate conclusion of "not disabled") as premised on a notion that Wilson's mental impairments "do not significantly limit her ability to perform basic work activities." Wilson cites ALJ Fein's Step 2 finding that Wilson has at least two mental impairments (depressive disorder and personality disorder) that are severe, and argues

(correctly) that, by definition, a severe impairment is one that causes more than minimal limitation in one's ability to perform work-related functions.[40] Wilson further cites ALJ Fein's findings that Wilson has moderate limitations in maintaining concentration, persistence or pace, and in social functioning, such that she is restricted to low-stress work requiring simple tasks and instructions. Wilson finds it impossible for ALJ Fein then to find that such limitations have little or no effect on ability to perform unskilled light work.

## C.    *Governing Legal Principles*

Although grid rules cannot be applied directly to claimants with nonexertional limitations, administrative law judges may consult them as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by . . . nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). Two Social Security rulings address this "framework" analysis.[41] They direct that when a claimant has both exertional and nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's residual functional capacity and vocational factors, to determine the extent of impairment caused by exertional limitations.

---

[40]    Under the Commissioner's regulation, "[a] 'severe' impairment is one that significantly limits an individual's physical or mental ability to do 'basic work activities.' " *Meadors v. Astrue*, 370 Fed. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The phrase "significantly limits" is not tantamount to an ultimate determination of disability. In this circuit, a Step 2 severity inquiry serves only to "screen out de minimis claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

[41]    *See* SSR 85-15, Titles II and XVI: Capability to do other work The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *3 (SSA 1985); *see also* SSR 83-14, Titles II and XVI: Capability to do other work the medical-vocational rules as a framework for evaluating a combination of exertional and nonexertional impairments, 1983 WL 31254, at *2, 4 (SSA 1983).

When the degree of limitation caused by an exertional impairment, alone, is such that a claimant is deemed disabled under a grid rule, the inquiry ceases, and benefits are awarded. But, when *exertional* limitations alone are not that debilitating, an administrative judge should next determine how much a claimant's "occupational base" is further reduced by effects of *nonexertional* limitations.[42] When claimants can be expected to make vocational adjustments, and, despite all limitations, still have a large potential occupational base, they ordinarily will not be found disabled under a "framework" analysis. *Id.*

## D.    Application

Wilson misinterprets ALJ Fein's decision when arguing that he found at Step 5 that her severe mental impairments do not significantly limit her abilities to perform *basic work activities*. ALJ Fein's Step 5 finding was that Wilson's mental impairments do not significantly erode her occupational base for *unskilled light work*. ALJ Fein found at Step 2 that Wilson's severe impairments (including mental impairments) have more than minimal effect on her ability to perform work activities generally, but extent to which an occupational base for light exertional and unskilled work is *eroded* by depressive and personality disorders is a distinctly different issue that is not governed or informed by Step 2 findings.

---

[42]    "Occupational base" is defined as:

The number of occupations, as represented by RFC, that an individual is capable of performing. These "base" occupations are unskilled in terms of complexity. The regulations take notice of approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations. Each occupation represents numerous jobs in the national economy. (In individual situations, specific skilled or semiskilled occupations may be added to the base.).

SSR 83–10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK–THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, at *7 (SSA 1983).

Wilson similarly misconstrues ALJ Fein's Step 2 findings to the effect that Wilson is moderately limited in maintaining concentration, persistence or pace, and in social functioning. These findings were made pursuant to a "special technique" that the Commissioner employs when assessing severity of mental impairments.[43] This complex and abstruse technique helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe. When applying this technique, *functional effects* of mental impairments are factored. The end objective, however, is the same as for physical impairments: to determine whether an impairment results in a limitation that surpasses a *de minimis* threshold regarding ability to perform basic work activities. Moderate functional limitations observed during application of the special technique at Step 2, therefore, do not translate automatically into subsequent residual functional capacity limitations factored into either Step 4 or Step 5 determinations.[44]

ALJ Fein found that Wilson retains ability to perform unskilled work at the light exertional level. Unskilled work needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568(a), 416.968(a). The Commissioner's interpretive and internal policy ruling states:

---

[43]    *See* 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis).

[44]    "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (SSA July 2, 1996); *see also Ladue v. Astrue*, No. 3:12-cv-600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y. Feb. 1, 2013).

> [B]asic mental demands of competitive, remunerative, unskilled work
> include the abilities (on a sustained basis) to understand, carry out, and
> remember simple instructions; to respond appropriately to supervision,
> coworkers, and usual work situations; and to deal with changes in a
> routine work setting.

SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK–THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *4 (SSA 1985).

Dr. Bruni opined that Wilson remains capable of understanding and following directions, sustaining attention and concentration for simple tasks, responding to and relating adequately to others, and adapting to simple workplace changes. (T. 41, 591). This opinion, together with the regulations and ruling cited above, provide substantial evidence supporting ALJ Fein's conclusion that Wilson's occupational base for light, unskilled work was not significantly eroded by her mental limitations, and ALJ Fein justifiably concluded under SSR 83-14 that the administrative-notice finding of "not disabled" under grid rule 202.20 was unaffected by Wilson's nonexertional mental limitations.

For these reasons, there is no legal or evidentiary error with respect to ALJ Fein's Step 5 findings that there is alternative and available work that Wilson can still perform, and, therefore, she is not disabled.

## IX.  Recommendation

The Commissioner's decision should be AFFIRMED, and Wilson's request to remand this action should be DENIED. .

## X. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___27___ day of _____June_____ 2014.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge